Hudson Navigation Company, Plaintiff, *v.* Union Trust Company of Albany, N. Y., Peter McCarthy, Frank McCarthy, Robert McCarthy, Alfred McCarthy and Charles M. Englis, Defendants.

(Supreme Court, Albany Trial Term, February, 1917.)

Mortgages — action for construction of trust mortgage — liens — pleading.

> A trust mortgage given by a navigation company upon one of its vessels then in course of construction considered, in connection with the bonds and the correspondence between the parties, to have been intended to cover the mortgaged property as a completed vessel.

> Where by the terms of the mortgage the mortgagor could withdraw, from the sinking fund, bonds deposited as collateral "to pay for new or additional vessels" or "extensions of or additions to or improvements of a permanent nature" to vessels, providing the cost should be twenty per cent above amount of bonds withdrawn, the mortgagor was not authorized to withdraw bonds to apply on the cost of one of the mortgaged vessels long after it was completed and paid for, as such course would exhaust the security coming from the sinking fund without giving to the bondholders security of any kind in lieu thereof.

> As the trustee by the terms of the mortgage was permitted to pay reasonable compensation to an attorney which would constitute a lien upon the property, it was entitled to an allowance of counsel fees in an action brought by the mortgagor to obtain a construction of the mortgage.

Action for the purpose of obtaining a construction by the court of article VIII of a trust mortgage.

Barber, Watson & Gibboney, for plaintiff.

Arthur L. Andrews, for defendant Union Trust Company of Albany, N. Y.

Thomas S. Fagan, for defendants McCarthy.

Merrill, Rogers & Terry, for defendant Charles M. Englis.

RUDD, J.   This action is brought for the purpose of obtaining a construction by the court of article VIII of a trust mortgage made by the Hudson Navigation Company to the Union Trust Company of Albany, N. Y., under date of February 1, 1908.

The Hudson Navigation Company was the mortgagor and a construction of article VIII will answer the question which is here presented as to whether the expenditures made by the mortgagor for the completion of the steamer *Berkshire* constitute a legal ground for the withdrawal by the plaintiff of bonds or moneys from the sinking and replacement fund created by article VIII of the trust mortgage.

The mortgage bears date February 1, 1908, and was acknowledged February 21, 1908.

Some time prior to the last mentioned date the Hudson Navigation Company began the construction of two steamboats then known as the *Princeton* and the *Trojan.*  The *Princeton* was afterward known as the *Berkshire,* and in the consideration of the question this steamer will hereafter in this memorandum be referred to as the *Berkshire.*

The real issue in this litigation seems to be quite simple.  It is really confined to the determination as to whether or not the *Berkshire* was covered by the trust mortgage as a completed steamer.

When the mortgage was acknowledged, February 21, 1908, there had been then expended upon the steamer *Berkshire* $519,674.94.  There has since that date been expended $619,525.20, making the aggregate cost of the steamer $1,139,200.14.

The vessel was completed and delivered to the company on May 1, 1913.

Article VIII of the mortgage held by the Union Trust Company of Anbany, N. Y., as trustee, providing for a sinking fund, reads as follows: "Any or all of the bonds deposited with the Trustee under the provisions of this Article, and any and all interest moneys paid by the Navigation Company to the Trustee, may be used by the Navigation Company and redelivered or returned by the Trustee to the Navigation Company in whole or in part from time to time, upon the written request of the Navigation Company signed by its President and Treasurer and based upon resolutions of its Board of Directors duly adopted, and the bonds so redelivered and the proceeds thereof and such interest moneys shall be used solely to pay or provide for new or additional vessels, or real or personal property, or for extensions of or additions to or improvements of a permanent nature, to or upon the steamboats, barges and other vessels, real estate, wharves, docks, plants or other property of the Company, the actual cost of which new vessels, extensions, additions and improvements shall be at least twenty (20) per cent. in excess of the face value of the bonds so to be redelivered or the interest money so to be returned by the Trustee, and all such new vessels, extensions, additions and improvements shall immediately become and remain subject to the lien of this mortgage as if specifically described herein, and the Navigation Company shall from time to time as may be proper or necessary, execute and deliver to the Trustee supplemental mortgages upon all vessels or other property which shall have been thus acquired, and such supplemental mortgages shall be treated as further and additional security for the payment of all

bonds issued by said Navigation Company under the provisions of this indenture and shall enure by way of accretion to the benefit and advantage of the said Trustee and its successors in this trust and to the said bondholders.''

The portion of article VIII above quoted provides for the redelivery by the trustee to the Hudson Navigation Company of bonds deposited with the trustee upon the written request of the navigation company; '' and the bonds so redelivered and the proceeds thereof and such interest moneys shall be used solely to pay or provide for new or additional vessels, or real or personal property, or for extensions of or additions to or improvements of a permanent nature, to or upon the steamboats, barges and other vessels, real estate, wharves, docks, plants or other property of the Company, the actual cost of which new vessels, extensions, additions and improvements shall be at least twenty (20) per cent. in excess of the face value of the bonds so to be redelivered '' etc.

Was the sum of $619,525.20 expended upon the steamship *Berkshire* after the 21st of February, 1908, expended for newly acquired property or for betterments or extensions, additions or improvements, as contemplated by article VIII of the mortgage, above cited?

The trust mortgage permitted the Hudson Navigation Company to borrow from the public to the extent of $4,000,000 upon certain securities offered, which would enable the Hudson Navigation Company to refinance the mortgage of the New Jersey Steamboat Company of $1,300,000, and for certain other specific purposes, the nature of which from the records of the Hudson Navigation Company clearly appears.

The company on or about the 1st of January, 1908,

decided to increase its capital from $4,000,000 to $8,000,000, and it provided for the issuance of twenty-year five per cent gold bonds, " to be secured by a first mortgage on two additional steamships which are being acquired by the company. The two said steamships when completed will be worth approximately $1,500,000."

These steamships included what is now known as the *Berkshire.*

This plan was changed. The company adopted a resolution providing for $4,000,000 worth of six per cent thirty-year bonds, and on the 28th of January, 1908, issued a notice to the security holders of the company. The notice read as follows:

" HUDSON NAVIGATION COMPANY,
" JERSEY CITY, N. J., *January 25th,* 1908.
" *To the Security Holders and Stockholders of Hudson Navigation Company:*

"At a meeting of the Board of Directors of your Company, held on January 16, 1908, at which all the members of the board were present, it was unanimously voted that there should be a new issue of $4,000,000 6% 30-year mortgage bonds of the Company, with suitable sinking fund provisions, the new issue to fund or provide among other things, for all existing or authorized bonds; said new 6% bonds to be secured by a first mortgage on all the property of this Company, except such property as is now subject to a first mortgage given by the New Jersey Steamboat Company, upon the payment of which this proposed new mortgage will be a first mortgage upon all property now owned by the Company.

" Said $4,000,000 of new 6% bonds is intended, among other objects, to fund or provide for the following issues and purposes:

## " *New Bónds.*

| | |
|---|---:|
| " 1st. To care for an equal amount of outstanding first mortgage 5% New Jersey Steamboat Company bonds, at their maturity in 1921, or sooner if desired . . . . . . . . . . . . . . . . . . . . . . . . | $1,393,000 |
| " 2d. Exchange immediately new 6% mortgage bonds for $970,000 face value of Hudson Navigation Company collateral trust 5% bonds' dated January 1st, 1903, due 1923. . . . . . . . . . . . . . . . . . | 970,000 |
| " 3d. Substitute new 6% bonds for the proposed issue of $1,000,000 which was to have been secured by mortgage on two new boats under construction, new bonds being better secured with better rate of interest. . . . . . . . . . . . . . | 1,000,000 |
| " 4th. Use balance to provide for completion of vessels under construction, Citizens Steamboat Company of Troy, bonds, debentures and obligations and other corporate purposes . . . . . . . . . . . . | 637,000 |
| " Total bonds to be authorized. . . . . | $4,000,000 |

" Proper legal steps are now under way for accomplishing the foregoing exchanges and issuing the new securities.   Further information may be obtained by application (written or otherwise) at the New York office of the Company, Pier 32 North River, New York city.          Very truly yours,

"ABEL I. CULVER,
" *President.*"

The 3d subdivision of this notice provides for the proposed issue of $1,000,000 which was to have been secured by mortgage on two new boats under construction, new bonds being better secured with better rate of interest.

The "two new boats under construction" include the *Berkshire*.

In the recital of the mortgage under consideration, it says:

"Whereas, the Navigation Company desires to make an issue of bonds for the purpose of refunding or providing for all existing issues of bonds or authorized issues of bonds of the Company and for all outstanding bonds which may be secured by mortgage upon any property now owned by the Company, and to provide funds for acquiring or building additional steamboats, barges and other vessels, and for the transaction of its business and the exercise of its corporate rights, privileges and franchises;"

And further:

"The Navigation Company agrees to pay to The Union Trust Company of Albany, N. Y., as trustee, on or before the fifth day of January, 1911, and on or before the fifth day of January in each year thereafter until the maturity of this issue, as a sinking fund for the retirement of bonds of this issue at par and accrued interest on the succeeding first day of February, the sum of $50,000, or the Navigation Company will, in lieu of such payment or any part thereof, deliver to said Trustee in accordance with the provisions and stipulations more specifically set out in the said mortgage or deed of trust, bonds of this issue taken at their par value."

The following provision of the mortgage seems to show that the intention was that the *Berkshire* and the *Trojan* when completed should be secured under the

mortgage of $4,000,000 or under the mortgage of $1,000,000 previously provided for.

The provision of the mortgage reads as follows:

"And the said Navigation Company covenants and agrees that it will execute and deliver to the Trustee, when and as soon as the said steamboats shall respectively be completed and entitled to a certificate of enrollment, supplemental or additional mortgages sufficient to completely vest said two steamboats in the Trustee, subject to the lien and for the purposes of this mortgage, and said Navigation Company further covenants and agrees that each of said steamboats shall then be free and clear of all other liens or encumbrances whatsoever;

" Provided, However, if the Navigation Company shall deem it necessary to carry out the plan outlined in a certain circular letter of the Navigation Company to its stockholders dated April 30th, 1907, and to place the said steamboats Princeton and Trojan under the lien of the mortgage described in said circular letter, then said Navigation Company shall have the right to carry out said plan and to place said steamboats Princeton and Trojan under said mortgage, and that the execution and delivery of said mortgage on said steamboats Princeton and Trojan described in said circular letter shall not be construed or deemed to be a breach of any covenant herein contained, and the lien of said mortgage shall be prior to the lien of this mortgage on said two steamboats."

On pages 18 and 19 of the mortgage it is provided as follows:

" Of this issue of four thousand (4,000) bonds, three hundred (300) bonds shall be forthwith certified by the Trustee and delivered to the Treasurer of the Navigation Company without further order, and seven hundred (700) bonds shall from time to time, upon

resolutions of the Board of Directors of the Naviga-
tion Company requesting the same, be certified by the
Trustee and delivered to the Treasurer of the Navi-
gation Company.   The Navigation Company cove-
nants and agrees to use the said one thousand (1,000)
bonds, viz., the aforesaid 300 bonds and the aforesaid
700 bonds, either for exchanging said bonds for bond
payment certificates issued or to be issued by the
Navigation Company under the terms of a circular let-
ter of the Navigation Company to its stockholders,
dated April 30, 1907, or to deliver said bonds in place
of such bond payment certificates, or if the Company
shall deem it necessary to carry out the plan outlined
in the said circular letter and to place the steamboats
Princeton and Trojan under the lien of the mortgage
described in said circular letter, then for exchanging
par for par said 1,000 bonds or any part thereof
secured by this mortgage for the bonds which may be
issued under the mortgage described in said circular
letter of April 30th, 1907.''

From this provision it certainly appears that 1,000
of the bonds issued under the $4,000,000 mortgage
were specifically issued to cover the completion of the
*Berkshire* and *Trojan,* having in mind all the time that
the mention of the *Princeton* in this mortgage and in
the resolution and records means *Berkshire.*

In a letter addressed by the Hudson Navigation
Company to the Union Trust Company, dated June 28,
1909, the trust company is asked to issue bonds '' for
the purpose of providing for the completion of new
steamboats now under construction for the use of
navigation.''

The Union Trust Company issued the bonds appar-
ently in accordance with the request of the Hudson
Navigation Company, following the action of the board
of directors of the company held March 24, 1908,

when, on motion made by Mr. McCarthy, the following resolution was unanimously adopted:

"*Resolved,* that The Union Trust Company of Albany, N. Y., Trustee under a certain indenture of trust and mortgage dated February 1st, 1908, made by this Company to said Trust Company to secure an issue of $4,000,000 of six per cent mortgage bonds, be and it is hereby requested to certify from time to time upon order of this Company signed by its President and Secretary, and to deliver to the Treasurer of the Company remaining 700 bonds of the aggregate face value of $700,000 from the 1,000 bonds which the Hudson Navigation Company in said indenture of trust and mortgage covenanted to use for exchanging for bond payment certificates issued under the terms of the Navigation Company's circular letter of April 30th, 1907, and as otherwise provided in said indenture of trust and mortgage."

Other letters were written by the Hudson Navigation Company to the Union Trust Company calling for the issuance of the bonds, and it certainly appears as if the boats under construction, one of which is now known as the *Berkshire,* were as completed vessels intended to be secured by the bonds issued under the mortgage.

No application was made by the Hudson Navigation Company to the Union Trust Company for the withdrawal of the bonds from the sinking fund until about 1913, since which time various withdrawals of bonds have been made.

The *Berkshire* was not newly acquired property. It was not necessary to execute a supplemental or additional mortgage for the boats were covered under the original mortgage of $4,000,000.

The mortgage was evidently issued originally to provide funds for the construction and completion of

these steamers. The *Berkshire* was but a hull upon which had been expended about $500,000. Still when the mortgage was given the completion of the boat must have been in mind, as evidenced by records and instruments executed and issued.

There is no claim that the Hudson Navigation Company must have the proceeds from the sale of the bonds, for which it has made application for withdrawal from the sinking fund, in order that the company may pay any unpaid claims or demands against the company for the completion of the *Berkshire*.

The steamer *Berkshire* has been for a long time a completed steamer, is fully paid for and in use by the company. It evidently was covered by the original mortgage. As a matter of safety and precaution, and possibly wisely, it was covered by a supplemental mortgage and the bondholders have the security which comes under the mortgage.

To allow the Hudson Navigation Company to withdraw bonds each January from the sinking fund to the amount of $50,000 to apply upon the cost of the *Berkshire,* long since paid, would exhaust the security which comes from the sinking fund without giving to the bondholders any security of any kind in lieu thereof.

The company seems to have complied with the necessary and formal requirements under the mortgage in its application to the Union Trust Company for leave to withdraw the bonds in question. No objection being raised as to the form of the application or to the legality of the same, it would seem that the trust company would have been justified in permitting the withdrawal.

This, however, is not intended as passing upon the questions which the defendant bondholders have here raised as to the alleged illegality of other and

previous withdrawals, for the reason that in the opinion of the court these questions are not now here involved, although they have been presented by the defendant bondholders in the answer which has been filed by the McCarthys.

It is claimed on their part that when deposits have heretofore been made by the navigation company of bonds for the sinking fund that such bonds have not been purchased or been owned by the navigation company, but on the other hand it appears that the defendant bondholders who are now raising that question, for valuable considerations which they have realized, have heretofore loaned bonds to the company for the purpose of enabling the company to deposit the same with the trust company.

However that may be, the application here is simply in an action brought by the navigation company against the Union Trust Company, the bondholders being allowed to intervene for their interests, asking a construction by the court, so far as the trust company is concerned, as to its duty under the mortgage upon the application now pending for the withdrawal of $50,000 of bonds from the sinking fund.

As has already been indicated, it seems clear that such application is not justified.

The company in completing the *Berkshire* has not acquired additional property, has no other or further security which would protect the bondholders as against the depletion of the sinking fund, and for that reason the complaint must be dismissed, with costs.

The trust company under the terms of the mortgage being permitted to pay reasonable compensation to attorneys which would constitute a lien upon the property, and in accordance with the provisions of the law, is entitled to costs and a reasonable allowance. The

Supreme Court, February, 1917.          [Vol. 99.

trust company stands simply as a stakeholder and under the law cannot be put to any unnecessary or unusual expense in the administration of a trust.

The defendant trust company is entitled to a bill of costs as against the plaintiff and to an allowance of $150.

Judgment accordingly.